**William Russell GARDNER, et al., Plaintiffs–Appellees,**

**v.**

**Jason EVANS, et al., Defendants,**

844

David Brand; Steve Maloney; Scott
Sanford; Gregg Scrimger,
Defendants–Appellants.

Henry Lee Holsey, Plaintiff–Appellee,

v.

Aaron Wieber, et al., Defendants,

Scott Sandford, Defendant–Appellant.

No. 15–12001.

United States Court of Appeals,
Sixth Circuit.

Argued: Dec. 9, 2015.

Decided and Filed: Feb. 4, 2016.

sued lacked specific information advising of the available appeals process, those notices were constitutionally inadequate. We must decide whether our decision in *J.C. Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir.1994), clearly established that a notice of eviction must include a direct explanation of the post-deprivation appeals process. Because we do not think that *Flatford* clearly established such a rule, we REVERSE the decision of the district court.

## I.

Between December 9, 2009, and May 8, 2010, William Gardner and seven of his fellow plaintiffs (collectively, "Tenants") were evicted from their respective homes in Lansing, Michigan, for alleged violations of the Lansing Housing and Premises Code. Jason Evans and the other defendants are the code compliance officers (collectively, "Inspectors") who inspected the buildings and issued the notices of eviction. In each instance, the evictions followed an inspection of the buildings conducted in conjunction with criminal drug investigations.

After the respective Inspector went through each of the homes, he summarized his findings in an eviction "red-tag" notice form, which he gave to the home's Tenant. Each red-tag was filled out as specified by the Lansing Housing and Premises Code § 1460.07. But none of the red-tags provided any information regarding the occupant's right to appeal the inspector's decision and receive an administrative hearing. Each red-tag stated:

> You must contact the undersigned, no later than seven days before the compliance due date, to set up an appointment

**ARGUED:** F. Joseph Abood, Office of the City Attorney, Lansing, Michigan, for Appellants. J. Nicholas Bostic, Lansing, Michigan, for Appellees. **ON BRIEF:** Mary Massaron, Plunkett Cooney, Bloomfield Hills, Michigan, for Appellants. J. Nicholas Bostic, Lansing, Michigan, for Appellees.

Before: BATCHELDER and GRIFFIN, Circuit Judges; CARR, District Judge.*

## OPINION

ALICE M. BATCHELDER, Circuit Judge.

The district court denied the defendants' motions for summary judgment on grounds of qualified immunity, holding that the defendants should have known that because the eviction notices they is-

---

* The Honorable James G. Carr, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

to meet at the structure (to verify that all corrections have been completed) or to acquire an authorized extension. Before the re-inspection you must obtain all required permits and have those repairs inspected and approved by the appropriate inspector.

All violations must be corrected with approved materials and methods. If you have any questions or concerns about complying within the time indicated, you may contact at (517) 483–4064 Monday through Thursday between the hours of 8–9 AM or 12–1 PM. [Name of the officer to contact.]

The red-tag notices failed to reveal that § 1460.12 of the Lansing Housing and Premises Code outlines a post-deprivation appeals process and directs that if an evicted occupant fails to file an appeal within twenty days after receiving a red-tag, the occupant waives the right to administrative review. Unaware of these requirements, none of the Tenants filed an appeal within the twenty-day period, and thus all of them inadvertently waived their right to an administrative review. Without recourse to any administrative remedy, the Tenants' sole option was to pursue a judicial remedy.

The only question presented to us in this appeal is whether the district court erred by denying the Inspectors' qualified immunity defense with respect to the constitutional adequacy of the notice given to the Tenants.

## II.

■ To overcome the defense of qualified immunity, a plaintiff "must, at a minimum, offer sufficient evidence to create a genuine issue of fact, that is, evidence on which [a] jury could reasonably find for the plaintiff." *DiLuzio v. Village of Yorkville,* 796 F.3d 604, 608–09 (6th Cir.2015) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)) (internal quotation marks omitted). But where, as here, the facts surrounding a question of qualified immunity are not in dispute, "the district court's denial of qualified immunity is subject to *de novo* review." *Thomas v. Cohen,* 304 F.3d 563, 568 (6th Cir.2002). In determining whether a defendant is entitled to qualified immunity, we consider two questions: First, did the defendant violate a constitutional right? And second, were the contours of that right clearly established? *Quigley v. Tuong Vinh Thai,* 707 F.3d 675, 680–81 (6th Cir.2013).

## A.

First, we address whether a constitutional violation occurred. The Tenants argue that the Inspectors violated their due process rights by failing to provide constitutionally sufficient notice of their ability to appeal the red-tag evictions. *See Flatford,* 17 F.3d at 168–69. In response, the Inspectors assert that the telephone number and the offer to answer questions was sufficient to satisfy the constitutional notice requirement. *See Silvernail v. Cnty. Of Kent,* 385 F.3d 601, 604–05 (6th Cir. 2004). They also assert that, because the Lansing Housing and Premises Code was extant and available to the public, the Tenants had constructive notice of the appeals process. *See City of West Covina v. Perkins,* 525 U.S. 234, 240–41, 119 S.Ct. 678, 142 L.Ed.2d 636 (1999). The district court agreed with the Tenants, holding that our precedent in *Flatford* clearly established that direct and clear notice of an appeals process is necessary to satisfy the constitutional notice requirement.

■ "The essence of due process is the requirement that a person in jeopardy of serious loss be given notice of the case against him and opportunity to meet it."

*Mathews v. Eldridge,* 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (quoting *Joint Anti–Fascist Comm. v. McGrath,* 341 U.S. 123, 171–72, 71 S.Ct. 624, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)) (internal quotation marks and alterations omitted). In cases where tenants are deprived of the right to occupy their homes for any length of time, "fundamental fairness requires notice in short order of the right to an administrative hearing, including the manner designated for obtaining timely review." *Flatford,* 17 F.3d at 169 (footnote omitted). These general principles are well-established, but there are no bright-line rules regarding how such notice must be given or how many details it must include. Rather, the sufficiency of notice requires a fact-based analysis that seeks to determine whether the notice is "reasonably calculated to inform the Plaintiffs of the allegations against them and provide[ ] a means for responding to the allegations." *Silvernail,* 385 F.3d at 605.

For purposes of deciding this case, we need not determine whether the red-tags provided by the Inspectors meet the constitutional notice standard that we have just outlined. Even if we assume, without deciding, that the Tenants are correct and that the red-tags were constitutionally infirm, the Tenants cannot satisfy the second prong of the qualified immunity analysis, namely, whether this constitutional notice requirement was clearly established.

### B.

The district court held that "[a]t least since *Flatford,* it has been clearly established in this Circuit that meaningful post-deprivation review process is constitutionally required, and that direct, personal notice of such a process to affected individuals is also required." *Gardner v. Evans,* Nos. 1:12cv1338, 1:12cv914, 2015 WL 403166 at *18 (W.D.Mich. Jan. 28, 2015). We disagree.

■ The Supreme Court has stated that, in order for a qualified immunity defense to fail,

> [t]he contours of the right [at issue] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (internal citations omitted); *see also Thomas v. Cohen,* 304 F.3d 563, 568–69 (6th Cir. 2002). Applying this standard to the present case, the Tenants' position fails because any inadequacies in the notice provided by the Inspectors would not have been apparent to a reasonable official solely upon the basis of *Flatford.*

In *Flatford,* our primary concern was *who* received the notice, not *what* the notice must include. *See Flatford,* 17 F.3d at 169. There, the official inspector gave detailed notice of the alleged violations and available avenues for redress to the landlord but not to the tenants who actually held possessory interests in the premises. *Id.* We held that the inspector's actions were "objectively unreasonable" because he knew that the Flatfords, the tenants, were not being allowed to enter their home and yet they were never given any information as to why they were evicted, whom they could contact, when they could expect relief, or how they could seek relief. *Id.* Thus, *Flatford* stands for the principle that the tenant is entitled to the same notice that is afforded to the landlord. But it does not clearly establish the particularity or specificity required for such notice.

A diversity of precedent highlights this general lack of clarity regarding the notice requirement for a post-deprivation appeals process. For example, in *West Covina*, the Supreme Court noted that "neither the Federal Government nor any State requires officers to provide individualized notice of the procedures for seeking return of seized property." *West Covina*, 525 U.S. at 242–43, 119 S.Ct. 678. There, as here, officers had seized the plaintiffs' property and provided them with a notice form that explained the seizure and gave a phone number to call for further information. *Id.* at 236–37, 119 S.Ct. 678. The Court stated that as long as the review process was available to the plaintiffs through an extant, publicly available source, then the officers were not responsible for providing particular notice of the remedies and process available. *Id.* at 241–43, 119 S.Ct. 678. The generalized notice provided was sufficient to satisfy due process. *See, e.g., Grayden v. Rhodes*, 345 F.3d 1225, 1244–45 (11th Cir.2003) (holding under similar circumstances that "a reasonable [housing] code enforcement officer could readily have concluded that [he] was under no obligation to provide notice ... of the tenants' right to challenge the condemnation decision" because that right was specified in a published, "generally available" city code).

Moreover, in *Silvernail*, we indicated that even though the plaintiffs' notice included only a phone number and an offer to answer questions, such notice was "reasonably calculated to inform the Plaintiffs of the allegations against them and provided a means for responding to the allegations." *Silvernail*, 385 F.3d at 605. More specific notice was not required. *Id.* at 604–05.

We need not multiply examples on this point. *Flatford* did not clearly establish that a notice of eviction must include an explicit reference to the availability of any post-deprivation appeals process and the manner in such an appeal may be pursued. The case law is not so clear on this point as to render the Inspectors' actions unreasonable.

### III.

Because we conclude that the type of notice required in these situations was not clearly established, we REVERSE the decision of the district court, and REMAND the case for proceedings consistent with this opinion.